1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA**

10         **WESTERN DIVISION**

11

12  ARTERO COLLINS,                    )        No. CV 15-8861-PLA
                                       )
13              Petitioner,            )
                                       )
14         v.                          )        **MEMORANDUM DECISION AND ORDER**
                                       )
15  SUSAN PERRY, Warden,               )
                                       )
16              Respondent.            )
                                       )
17  _____  )

18                                  **I.**

19                       **SUMMARY OF PROCEEDINGS**

20         On March 30, 2011, a Los Angeles County Superior Court jury found petitioner guilty of two

21  counts of assault with a firearm, in violation of California Penal Code section 245, and not guilty

22  as to a third count of assault with a firearm.  (Clerk's Transcript ["CT"] 132-34).  The jury also

23  found that petitioner personally used a firearm (Cal. Penal Code § 12022.5).  (Id.).  Subsequently,

24  the trial court found that that petitioner had been convicted of a serious felony, that he had

25  suffered a prior conviction under California's Three Strikes Law, and that he had served a prior

26  prison term (Cal. Penal. Code §§ 667, 1170.12, 667.5).  (Id. at 156-57).  The trial court sentenced

27  petitioner to twenty-four years in state prison.  (Id. at 183-87).

28

Petitioner appealed his conviction. (Respondent's Notice of Lodging Nos. 2-5). On October 16, 2012, the California Court of Appeal affirmed the conviction. (Lodgment No. 6). Petitioner did not file a petition for review in the California Supreme Court. On April 10, 2015, however, he filed a petition for writ of habeas corpus in the California Court of Appeal, which was denied on May 1, 2015. (Lodgment Nos. 7-8). Petitioner then filed a petition for writ of habeas corpus in the California Supreme Court, which was denied on September 30, 2015. (Lodgment Nos. 9-10).

Petitioner then filed a petition for writ of habeas corpus in the Los Angeles County Superior Court, which was denied on May 3, 2016. (Lodgment Nos. 12-13). Next, he filed a petition for writ of habeas corpus in the California Court of Appeal, which was denied on June 10, 2016. (Lodgment Nos. 14-15). Petitioner subsequently filed a petition for writ of habeas corpus in the California Supreme Court, which was denied on October 12, 2016. (Lodgment Nos. 16-17).

Meanwhile, on November 13, 2015, petitioner filed his Petition in this Court and consented to have the undersigned Magistrate Judge conduct all further proceedings in this matter. (Docket Nos. 1, 2). Respondent, likewise, consented to have the undersigned Magistrate Judge conduct all further proceedings and, thereafter, filed an Answer and a supporting Memorandum of Points and Authorities ("Answer"). (Docket Nos. 15-16, 30). Petitioner then filed a Reply. (Docket. No. 33). Subsequently, petitioner filed a First Amended Petition ("FAP"). (Docket No. 38). Accordingly, on March 16, 2017, respondent filed a Supplemental Answer. (Docket No. 42). On May 8, 2017, petitioner filed a Supplemental Reply. (Docket No. 46). This matter has been taken under submission, and is ready for decision.

/

/

/

/

/

/

/

## II.

## STATEMENT OF FACTS

The Court adopts the factual summary set forth in the California Court of Appeal's Opinion affirming petitioner's conviction.[1]

Prosecution Evidence

On April 18, 2010, John McGhee was working as a security guard at The Social Club on Normandie in Los Angeles. [Petitioner], who appeared intoxicated, was escorted out of the club by McGhee because of his rude behavior, "calling out his set," and repeatedly called out his gang's name, "B.P."

Derwin Gibson was working with McGhee at The Social Club. At approximately 5:30 a.m., Gibson and McGhee saw [petitioner] banging on the door of the club, demanding to be let back in. Gibson heard [petitioner] yell, "You better watch your back, that's on Black P Stone," and then saw him walk away. Gibson and McGhee went outside to make sure that [petitioner] had left the premises. They saw [petitioner] walking back toward them carrying a gun. Gibson grabbed McGhee, ran into the club, and locked the door behind them. Gibson and McGhee then heard a gunshot.

After the shooting, Sandra Davis, another security guard at the club, called 9–1–1. Deputy Lawrence Laughlin responded to the scene and interviewed McGhee, Gibson, and Davis. Davis told him the shooter was known as "Poppy" or "Bobby." She also said the shooter had been kicked out of the club, but returned with a gun and pointed it at her and her coworkers. After being kicked out, the shooter was banging on the door and saying, "Let me in. This is P Stone gang." Davis described the shooter as a light-skinned African American male, approximately 5'8" to 5'10" and 180 pounds, with braids like corn rows, wearing a black T-shirt with designs on it.[2]

Gibson told Laughlin that the shooter was wearing a red button down shirt and a red cap. He described the shooter as a light-complected African American with braids in his hair, around 23 or 24 years of age. He stated that he was able to see the shooter's face through the screen door of the club.

Gibson saw [petitioner] return to the club a week or two after the incident. Gibson recognized him, but did not call the authorities because he "was worried

---

[1]   The Court "presume[s] that the state court's findings of fact are correct unless [p]etitioner rebuts that presumption with clear and convincing evidence." Tilcock v. Budge, 538 F.3d 1138, 1141 (9th Cir. 2008) (citations omitted); 28 U.S.C. § 2254(e)(1). Because petitioner has not rebutted the presumption with respect to the underlying events, the Court relies on the state court's recitation of the facts. Tilcock, 538 F.3d at 1141. To the extent that an evaluation of petitioner's individual claims depends on an examination of the trial record, the Court herein has made an independent evaluation of the record specific to those claims.

[2]   At trial, Davis denied making these statements or even being interviewed by the deputy.

about what would possibly happen again if [the shooter] knew that [he] was on the phone calling the police."

On July 11, 2010, Gibson saw [petitioner] at the club again with other men. One of the men with [petitioner] apologized to Gibson for his "homeboy's actions." Gibson told the man that he would not allow someone who shot at him into the club. When [petitioner] and the other men began to disburse, Gibson got the attention of a sheriff's deputy who was patrolling the street and told him that [petitioner] had fired a shot at him in April. [Petitioner] was then arrested.

On July 9, 2010, Detective Phil Rodriguez of the Los Angeles Police Department gang unit assisted fellow officers in updating gang photographs, including photographs of [petitioner]. Detective Rodriguez testified with respect to his personal knowledge of [petitioner], including that [petitioner] had admitted his gang affiliation and his moniker to the detective and his partners. Detective Rodriguez also gave expert testimony with respect to the Black P Stone gang.

In telephone calls recorded while [petitioner] was in jail, [petitioner] referred to himself as "Pop" or "Poppy."

Defense Evidence

Patricia Triplett, also a security guard at the club, testified that she recalled four or five African-American men being kicked out of the club that night, but she did not recall whether [petitioner] was among them. She was in the lobby of the club with McGhee, Gibson, and Davis when she heard a gunshot. She did not see the person who fired the gun.

Chester Waingo was collecting recyclables near the club early on the morning of the shooting, when he saw a man with a gun walk past him quickly. The man was approximately six feet away from Waingo. He did not look at the man's face because he was focused on the gun. When he saw the gun, he ran away. Later, Waingo heard a gunshot. Waingo was interviewed by authorities approximately ten months later and was unable to pick out the man carrying the gun from a six-pack photo line-up.

Rebuttal

On November 2, 2010, Davis spoke with defense investigator, Craig Peters, regarding the shooting. In the interview, Davis said that she heard one of the shooter's friends say, "Bobby, come on." She heard the same friend say either "Black Keystone" or "P Stone." She described the shooter as a light-complected African American male with corn row braids.

(Lodgment No. 6 at 3-6 (original footnote renumbered)).

/

/

/

/

/

4

# III.

## PETITIONER'S CONTENTIONS

1.     Appellate counsel deprived petitioner of his Sixth Amendment right to effective assistance of counsel by failing to conduct a sufficient investigation into the trial record before filing petitioner's direct appeal.  (FAP at 5, 9-14).[3]

2.     Appellate counsel deprived petitioner of his Sixth Amendment right to effective assistance of counsel by asserting a claim on direct appeal that relied on facts outside of the trial record.  (Id. at 5, 15-18).

3.     The trial court contravened California Penal Code section 1170.1 by imposing multiple sentencing enhancements based on petitioner's use of a firearm.  (Id. at 6, 40-45).

4.     The trial court violated petitioner's right to due process and violated his rights under the Fifth Amendment's Double Jeopardy Clause by imposing punishments for both the crime of assault with a deadly weapon and for the alleged sentencing enhancement based on using a firearm.  (Id. at 6, 46-64).

# IV.

## STANDARD OF REVIEW

The Petition was filed after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA").  Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Therefore, the Court applies the AEDPA in its review of this action.  See Lindh v. Murphy, 521 U.S. 320, 336, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997).

Under the AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a person in state custody "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to,

---

[3]     Because some of the exhibits to petitioner's FAP are unmarked and because petitioner's arguments supporting his various grounds for relief are not presented in sequential order, the undersigned's citations to petitioner's FAP shall reference the sequential page number of the electronic copy of the FAP that petitioner filed on January 18, 2017.  (See Docket No. 38).

or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As explained by the Supreme Court, section 2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). In Williams, the Court held that:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13; see Weighall v. Middle, 215 F.3d 1058, 1061-62 (9th Cir. 2000) (discussing Williams). A federal court making the "unreasonable application" inquiry asks "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409; Weighall, 215 F.3d at 1062. The Williams Court explained that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; accord: Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003). Section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings," Lindh, 521 U.S. at 333 n. 7, and "demands that state court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 123 S. Ct. 357, 360, 154 L. Ed. 2d 279 (2002) (per curiam). A federal court may not "substitut[e] its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d)." Id.; Early v. Packer, 537 U.S. 3, 123 S. Ct. 362, 366, 154 L. Ed. 2d 263 (2002) (per curiam) (holding that habeas relief is not proper where state court decision was only "merely erroneous").

The only definitive source of clearly established federal law under the AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412. While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law (Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999)), only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied. Williams, 529 U.S. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.), cert. denied, 540 U.S. 968 (2003). Furthermore, under 28 U.S.C. § 2254(e)(1), factual determinations by a state court "shall be presumed to be correct" unless the petitioner rebuts the presumption "by clear and convincing evidence."

A federal habeas court conducting an analysis under § 2254(d) "must determine what arguments or theories supported, or, [in the case of an unexplained denial on the merits], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Harrington v. Richter, 526 U.S. 86, 101, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."). In other words, to obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

The United States Supreme Court has held that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991). Here, petitioner presented his first three grounds for relief in two habeas petitions that he filed in the California Court of Appeal. (Lodgment Nos. 7, 14). The California Court of Appeal issued reasoned opinions rejecting those grounds. (See Lodgment Nos. 8, 15). Thereafter, the California Supreme Court summarily denied each of those grounds.

(See Lodgment Nos. 10, 17). Accordingly, this Court reviews the California Court of Appeal's reasoned opinions rejecting petitioner's first three grounds for relief under AEDPA's deferential standard. See Ylst, 501 U.S. at 803; Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (district court "look[s] through" unexplained California Supreme Court decision to the last reasoned decision as the basis for the state court's judgment).

Petitioner raised his fourth ground for relief in a habeas petition that he filed in the California Supreme Court. (Lodgment No. 16). The California Supreme Court denied that ground without comment or citation. (Lodgment No. 17). The Court, therefore, reviews that decision to "determine what arguments or theories . . . could have supported . . . the state court's decision; and then [the Court] ask[s] whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." See Richter, 562 U.S. at 102; Bemore v. Chappell, 788 F.3d 1151, 1161 (9th Cir. 2015).

**V.**

**DISCUSSION**

**GROUNDS ONE AND TWO: APPELLATE COUNSEL'S PERFORMANCE**

In his first two grounds for relief, petitioner contends that he was deprived of his right to effective assistance of counsel on appeal. (See FAP at 5). The guarantees of due process entitle a criminal defendant to effective assistance of counsel on his first appeal as of right. See Pollard v. White, 119 F.3d 1430, 1435 (9th Cir. 1997) (citing Evitts v. Lucey, 469 U.S. 387, 391-405, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985)). A two-step analysis governs petitioner's ineffective assistance of counsel ground for relief. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Evitts, 469 U.S. at 395-99. First, petitioner must prove that his attorney's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88, 690. To establish deficient performance, petitioner must show that his counsel's acts and omissions, examined within the context of all the surrounding circumstances, were outside the "wide range" of professionally competent assistance. Kimmelman v. Morrison, 477 U.S. 365, 386, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986); Strickland, 466 U.S. at 690. In assessing whether

appellate counsel performed reasonably, reviewing courts must be mindful that appellate counsel has no constitutional duty to raise every issue, where, in the attorney's judgment, the issue has little or no likelihood of success. McCoy v. Wisconsin, 486 U.S. 429, 436, 108 S. Ct. 1895, 100 L. Ed. 2d 440 (1988).

Second, petitioner must show that he was prejudiced by demonstrating a reasonable probability that, but for his counsel's errors, the result would have been different. Strickland, 466 U.S. at 694. Petitioner must prove both deficient performance and prejudice. A court need not, however, determine whether counsel's performance was deficient before determining whether the petitioner suffered prejudice as the result of the alleged deficiencies. Id. at 697.

As explained below, neither of petitioner's allegations of attorney error warrants relief. Each of those allegations is addressed in turn below.

**1.    Failing to Investigate and Correct the Record**

In his first allegation of attorney error, petitioner maintains that appellate counsel erred in failing to apprise the California Court of Appeal of the accurate facts pertaining to petitioner's challenge to the trial court's refusal to continue the trial so that petitioner's substitute counsel could familiarize himself with the case. (FAP at 5, 9-14). In particular, petitioner faults counsel for failing to timely notify the appellate court that it had misstated the date on which petitioner's substitute counsel first moved to continue the trial. (Id.).

In its opinion affirming the judgment against petitioner, the court of appeal stated the following: "Trial was initially set for January 12, 2011. On that date, the deputy public defender representing [petitioner] made the first request for continuance to allow [petitioner] to retain private counsel." (Lodgment No. 6 at 10; see also id. at 13 ("[I]n this case, [petitioner] was granted a continuance to retain private counsel on January 12, 2011, the day set for trial.")). This statement, according to petitioner, was not true, i.e., as the Court understands petitioner's claim, the request for a continuance was not made on the day set for trial, but at some time prior to the trial date. (FAP at 13). Moreover, petitioner maintains that in denying his claim challenging the trial court's refusal to grant the requested continuance, the court of appeal relied "heavily" on this purported misstatement of fact. (Id.). Consequently, petitioner maintains that it was incumbent on counsel

to timely correct the court of appeal's purported misstatement, as doing so likely would have, in petitioner's opinion, resulted in the court of appeal holding that the trial court erred in denying petitioner's request for a continuance. (Id. at 14).

**a.  Relevant Facts**

Although the court of appeal did not address petitioner's current ineffective assistance of counsel claim, it nevertheless set forth the following relevant facts underlying petitioner's direct appeal challenge to the trial court's rulings on his requests to continue the trial date:

> Trial was initially set for January 12, 2011. On that date, the deputy public defender representing [petitioner] made the first request for continuance to allow [petitioner] to retain private counsel. The trial court granted the continuance. A minute order in the clerk's transcript and a transcript of an open court discussion on January 20, 2011, contained in the augmented record on appeal show that the deputy public defender informed the court he had received a voice mail from retained private counsel advising him that he would not be substituting in to represent [petitioner]. The matter was continued for an additional week to allow the deputy public defender, who had not anticipated trying the case, to subpoena potential defense witnesses and obtain additional discovery items from the prosecution. The court announced that there would be no further continuances granted in the case.

> Although there is no reporter's transcript of the conversation, the trial court, private counsel, the deputy public defender, and the prosecutor all agree that on a date sometime between January 12, 2011, and March 3, 2011, private counsel requested a continuance of 60 days to prepare for trial on the basis that although he was an experienced civil litigator, he had never tried a criminal case. The court refused to grant a 60-day continuance but stated that it would grant a 30-day continuance -- which would have gone beyond the date then set for trial -- and allow private counsel to substitute in. Private counsel declined, stating that 30 days would not be sufficient preparation time to adequately represent [petitioner].

> A reporter's transcript in the augmented record shows that private counsel appeared at a March 3, 2011 readiness conference and was allowed to address the trial court. He asserted that more than 60 days had passed since his request for the 60-day continuance was denied[4] and made a third request for a continuance, this time for 45 days, to prepare to represent [petitioner]. The court denied the request, explaining that [petitioner] had been arraigned in October 2010, and that it had previously stated at the January 20, 2011 hearing that no further continuances would be granted. The continuances had only been granted because there had been new or late discovery by the prosecution and because the deputy public defender required a continuance to be present at his 13-year-old daughter's jaw surgery. The court granted private counsel permission to represent [petitioner] if he could be ready the next day, which private counsel declined as impossible. The

---

[4]  In fact, the number of days that had passed since the second request for continuance could not have been more than 50 days, as the request could not have been made prior to January 12, 2011.

court then ordered that the deputy public defender remain counsel of record.  The deputy public defender made an unopposed request that jury selection be deferred until the following Monday, which the court granted.  The court offered private counsel the opportunity to represent [petitioner] if he could prepare for trial over the weekend.  Private counsel declined, stating that he did not yet have [petitioner's] file and could not prepare to defend him in such a short time.

(Lodgment No. 6 at 10-11 (original footnote renumbered)).

The court of appeal rejected petitioner's challenges to the trial court's resolution of his second and third requests for a continuance to allow his proposed substitute counsel to prepare for trial.  (Id. at 11-14).  First, in addressing the second request for continuance,[5] the court of appeal held that the trial court did not abuse its discretion in limiting the continuance to only thirty days, rather than the requested sixty days.  The court of appeal reasoned that "the amount of time [that] the court offered private counsel to prepare was a reasonable exercise of discretion" and that the amount of time was substantially longer than the amount of time at issue in other cases where an abuse of discretion had been found.  (See id. at 13 (observing that thirty-day continuance was "significantly greater than the continuance of a 'few days' contemplated in" People v. Courts, 37 Cal. 3d 784, 210 Cal. Rptr. 193, 693 P.2d 778 (1985)).  The court of appeal further noted that, unlike the defendant in another case in which an abuse of discretion had been found, petitioner "did not file a declaration of reasons for wanting to retain private counsel."  (Id. (citing Courts, 37 Cal. 3d at 788-89)).  Accordingly, the court of appeal concluded that petitioner had failed to present "'compelling circumstances supporting his late request for continuance,' such that the court abused its discretion in offering a continuance of 30 days but denying the request for a continuance of 60 days."  (Id. at 13-14 (citation omitted)).

Second, the court of appeal held that the trial court did not abuse its discretion in denying the third requested continuance of forty-five days.  (Id. at 14).  In so holding, the court of appeal

[5]     The court of appeal, of course, noted that the trial court had granted petitioner's first request for a continuance on January 12, 2011 -- the day, according to the court of appeal, that petitioner's case was set for trial.  (Lodgment No. 6 at 10).  A review of the record, however, suggests that what the court of appeal referred to as petitioner's second request for continuance may, in fact, have been his first request.  In any event, sometime around January 12, 2011, the trial court granted petitioner a thirty-day continuance to allow substitute counsel to familiarize himself with petitioner's case.  (See supra).

reasoned that the request was untimely because it had been made one day before trial was set to begin and because the trial had already been delayed for almost two months. (Id.). Further, the court of appeal noted that petitioner had been arraigned nearly five months before he requested the third continuance. (Id.). Finding that, under the circumstances, no compelling circumstances justified further delay, the court of appeal concluded that "the trial court acted within its discretion in denying [petitioner's] third motion for continuance. . . ." (Id.).

Twenty-five days after the court of appeal issued its decision affirming the judgment against petitioner, appellate counsel noticed that the court of appeal had stated in its opinion that the first request for continuance was made "'on January 12, 2011, the day set for trial.'" (FAP at 5 (quoting Lodgment No. 6 at 13)). Having reviewed the opinion, counsel believed that the court of appeal's finding of fact in this regard was erroneous and sought to correct it. (Id. at 34-37). However, counsel missed the deadline for filing a petition for rehearing and, therefore, filed a motion for relief from default, as well as a proposed motion for rehearing. (See id.). Although the court of appeal granted the motion for relief from default, the court of appeal denied the petition for rehearing. (See id. at 38-39). In response to that decision, according to petitioner, counsel confided to petitioner that, "because of the mistakes made, 'we have come to the end of the road.'" (Id. at 6; see also id. at 38).

### b.    California Court of Appeal Opinion

Petitioner raised his current allegation of attorney error in a habeas petition that he filed in the California Court of Appeal. (Lodgment No. 7). The court of appeal rejected petitioner's allegation of attorney error on its merits. (Lodgment No. 8). In doing so, the court of appeal stated that petitioner had failed to show that, but for appellate counsel's alleged errors, the outcome of his appeal would have been different. (Id. (citing, inter alia, Strickland)).[6]

/

/

---

[6]    The court of appeal rejected petitioner's second allegation of attorney error, addressed below, in the same order and for the same reason. (See Lodgment No. 8).

### c. Analysis

In rejecting petitioner's claim, the California Court of Appeal applied the proper legal standard for analyzing federal law challenges involving allegations of ineffective assistance of counsel. (See id.). Accordingly, the court of appeal's resolution of petitioner's claim was not contrary to the Supreme Court's clearly established precedents. As such, the only avenue through which petitioner can obtain habeas relief on his allegations of ineffective assistance of counsel is by showing that the court of appeal's resolution of his claims constituted an "unreasonable application of" the Supreme Court's clearly established precedent -- that is, he must show that the court of appeal unreasonably applied the governing legal standard to the facts of his case. See Penry v. Johnson, 532 U.S. 782, 792, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001). As explained below, petitioner cannot make that showing.

At bottom, petitioner contends that appellate counsel somehow should have corrected the court of appeal's purported misstatement about the date on which petitioner made his first request for a continuance and that counsel's failure to do so was prejudicial. This claim fails for a variety of reasons. First, the court of appeal's purported misstatement could not have had a meaningful impact on the court of appeal's resolution of petitioner's challenges on appeal, as those challenges did not involve the trial court's ruling on petitioner's first request for a continuance. Rather, petitioner's challenges on appeal were directed at the trial court's rulings on petitioner's subsequent two requests for continuances. Moreover, the fact that petitioner's challenges on appeal did not involve the trial court's ruling on his first request for continuance is unsurprising, considering that the trial court granted the requested continuance.[7]

Second, the premise of petitioner's claim -- that the court of appeal erroneously stated that trial was set to begin on January 12, 2011 -- is unfounded. Indeed, the Reporter's Transcript ["RT"] of a hearing conducted on January 20, 2011, indicates that trial had been set to begin

---

[7] As stated above, the court of appeal may have been referring to petitioner's first request for continuance in discussing what it identified as petitioner's second request for continuance. Assuming that is true, it makes little difference because, either way, the trial court granted the requested continuance, though not for the full sixty days requested by petitioner.

earlier, but that the trial date had been pushed at the prior hearing due to petitioner's desire to have substitute counsel represent him. (See RT at A-1). Given that fact, petitioner has not shown that the court of appeal's statement of facts was erroneous.

Third, even if the court of appeal had erroneously found that the first request for continuance was made on the date on which trial was set to begin, there is no reason to believe that correcting that purported misstatement of fact would have impacted the court of appeal's decision. Although petitioner asserts that the court of appeal relied "heavily" upon its purported misstatement, a review of the court of appeal's opinion does support this assertion. Indeed, as set forth above, the date on which the first request was made did not factor into the court of appeal's resolution of petitioner's challenge to the trial court's handling of the second request for continuance. Rather, in affirming the trial court's decision as to that request, the court of appeal explained that the amount of time that the trial court continued the case -- thirty days -- was sufficient under the circumstances and that petitioner had failed to file a declaration of reasons for wanting to retain private counsel. Although the court of appeal noted in passing that a request for a continuance had been made on the date on which trial was set to begin, the court of appeal never cited that fact in explaining why the trial court acted within the discretion afforded it in continuing the trial for thirty days, rather than for sixty days. Instead, the court of appeal cited that fact only to contrast it with a prior case in which a trial court denied a defendant's request for a continuance that was made eight days before trial. (Lodgment No. 6 at 13). But other than for that purpose, the court of appeal never mentioned the date or timing of the first request for a continuance in its analysis regarding the trial court's resolution of petitioner's second request for a continuance.

The court of appeal, likewise, did not mention the date or timing of the first request for continuance in explaining its reasoning for holding that the trial court properly denied the third request for continuance. Rather, the court of appeal held that the trial court properly denied the request because the request was untimely, in that it had been made one day before the scheduled commencement of trial -- a trial that had already been delayed for almost two months. (Id. at 14). The court of appeal also concluded that no compelling circumstances justified further delay.

1  Finally, assuming that the court of appeal misstated the date and timing of petitioner's first

2  request for a continuance, petitioner cannot show that counsel performed unreasonably in

3  attempting to correct the misstatement or that petitioner suffered prejudice from counsel's

4  performance.  On the contrary, in the supplemental opening brief that counsel filed on petitioner's

5  behalf, counsel stated that substitute counsel first requested a continuance "[o]n January 12, 2012

6  [sic] and at an undetermined amount of time before [petitioner's] trial was scheduled to

7  commence. . . ."  (Lodgment No. 5 at 2).  And, after the court of appeal issued its opinion, counsel

8  noticed the purported misstatement of fact and alerted the court of appeal to it.  (See FAP, Exh.

9  B).  Although counsel did not timely file a petition for rehearing, he nevertheless filed a successful

10  motion for relief of default.  (Id.).  Consequently, the court of appeal considered petitioner's petition

11  for rehearing, which included the supposed fact that the court of appeal had misstated the date

12  and timing of the first request for continuance.  (Id., Exh. C).  Although the court of appeal denied

13  the petition for rehearing (id.), petitioner fails to cite any argument that counsel could have made --

14  but failed to make -- that would have convinced the court of appeal that it had misstated any

15  relevant fact regarding petitioner's challenges to the trial court's handling of his requests for a

16  continuance.

17  In sum, petitioner can neither show that the court of appeal misstated the facts regarding

18  the timing of his first request for continuance nor show that any purported misstatement of fact

19  impacted the court of appeal's resolution of petitioner's direct appeal.  Moreover, petitioner has

20  cited no action that counsel failed to take that would have made the court of appeal any more likely

21  than it already was to find that the trial court erred in resolving petitioner's requests for a

22  continuance.  As such, the court of appeal's rejection of this ground for relief was neither contrary

23  to, nor an unreasonable application of, clearly established federal law as determined by the United

24  States Supreme Court.

25  /

26  /

27

28

## 2. Presentation of Facts

In his second allegation of attorney error, petitioner contends that appellate counsel performed unreasonably by failing to adequately present the facts underlying petitioner's claim on direct review that the prosecutor withheld exculpatory information. (FAP at 5, 15-18). Specifically, petitioner faults counsel for "ma[king] the tactical decision of using 'facts outside the record' in [petitioner's] opening brief." (Id. at 15). Because, according to petitioner, the underlying issue was supported by facts outside of the record, counsel should not have asserted the underlying issue on appeal. (Id. at 16). Rather, petitioner believes that the issue should have been asserted in a petition for writ of habeas corpus and, moreover, that he likely would have succeeded on the issue if it had been raised "via habeas corpus." (Id. at 15).

### a. Relevant Facts

On appeal, appellate counsel argued that the prosecution suppressed an investigation report containing evidence of an alibi witness, in violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). (See Lodgment No. 6 at 5). In support of that argument, counsel attached three exhibits to the appellate brief that were neither admitted into the record nor presented to the trial court. (Id.). Citing that fact, the court of appeal summarily rejected petitioner's Brady claim without further discussion. (Id.). Although petitioner subsequently filed several state habeas petitions, he did not assert a Brady claim in any of them.

### b. Analysis

Petitioner's allegation of attorney error does not warrant habeas relief. To the extent that petitioner argues that counsel erred in asserting the Brady claim on appeal, that argument fails for lack of prejudice. Although the court of appeal summarily dismissed the claim, it did not prevent petitioner from later asserting the claim in a state habeas petition. That petitioner ultimately elected against doing so was attributable not to counsel's decision to attempt to assert the claim on direct review, but rather to petitioner's decision to abandon the claim in his habeas petitions. To the extent that petitioner contends that counsel should have asserted the claim in a habeas petition, rather than on direct appeal, that contention lacks merit because, as the Supreme Court has made clear, there is no constitutional right to counsel in state post-conviction

proceedings.  <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555-57, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987).

In short, appellate counsel's error in asserting a claim on direct review that was based on facts outside the record did not prejudice petitioner.  Accordingly, the court of appeal's rejection of this ground for relief was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

**GROUND THREE: CALIFORNIA PENAL CODE SECTION 1170.1**

In his third ground for relief, petitioner contends that the trial court contravened California Penal Code section 1170.1 by imposing multiple sentencing enhancements based on his use of a firearm.  (FAP at 6).  Although his argument is somewhat convoluted, petitioner apparently directs his claim at the fact that the trial court imposed a ten-year enhancement, pursuant to California Penal Code section 12022.5(a), based on the jury's finding that he used a firearm, while also imposing a five year enhancement, pursuant to California Penal Code section 667(a),  based on the finding that he had suffered a serious felony conviction.  (<u>See id.</u> at 40-45).  Imposing sentencing enhancements for both of these findings, according to petitioner, was erroneous because California Penal Code section 1170.1(f) prohibits the imposition of more than one sentencing enhancement for using a firearm while committing a single offense.[8]  (<u>Id.</u>). Accordingly, petitioner believes that the five-year sentencing enhancement for suffering a serious felony should be stricken.  (<u>Id.</u>).

**1.      The California Court of Appeal Opinion**

The California Court of Appeal rejected this claim on its merits.  (Lodgment No. 15).  In doing so, the court of appeal explained that section 1170.1(f), as well as the cases interpreting that sub-section, was not applicable to petitioner's case because the trial court imposed only one

---

[8]     California Penal Code section 1170.1(f), in pertinent part, provides as follows: "When two or more enhancements may be imposed for being armed with or using a dangerous or deadly weapon or a firearm in the commission of a single offense, only the greatest of those enhancements shall be imposed for that offense."

sentencing enhancement pertaining to petitioner's use of a firearm. (Id.). Specifically, the court of appeal stated: "Penal Code section 1170.1, subdivision (f) and People v. Le (2015) 61 Cal. 4th 416 are inapplicable to this case. The only enhancement imposed for petitioner's firearm use was an enhancement under Penal Code section 12022.5, subdivision (a). The remaining enhancements, imposed under Penal Code section 667, subdivisions (a) and (b), pertained to petitioner's prior convictions." (Id.).

### 2. Federal Legal Standard and Analysis

Matters relating to state sentencing law generally are not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court decisions on state-law grounds."). Nonetheless, a state court's misapplication of state sentencing law may violate due process if "[the error] is so arbitrary or capricious as to constitute an independent due process" violation. Richmond v. Lewis, 506 U.S. 40, 50, 113 S. Ct. 528, 121 L. Ed. 2d 411 (1992). Here, the court of appeal held that, under state law, petitioner was not entitled to be re-sentenced because section 1170.1(f) was inapplicable to his sentence. This Court is bound by the court of appeal's interpretation of California law. See Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) (per curiam) (stating that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus").

Moreover, even if it were not bound by the state court's interpretation of California law, this Court would reach the same conclusion as did the court of appeal. A review of petitioner's allegations shows that petitioner is simply mistaken about the circumstances underlying the trial court's imposition of the five-year sentencing enhancement based on petitioner having suffered a serious felony conviction. Although petitioner evidently believes that the challenged enhancement stemmed from the fact that his current conviction is a serious felony, it is clear that the enhancement pertained to the fact that petitioner's prior conviction was a serious felony conviction under California law. See Cal. Penal Code § 667(a). Indeed, the challenged enhancement was imposed pursuant to California Penal Code section 667(a), which provides for

a five-year sentencing enhancement for each prior serious felony of which the defendant has been

convicted.[9]  As such, contrary to petitioner's belief, the trial court did not impose two sentencing

enhancements based on petitioner's use of a firearm in committing the crime underlying his

current conviction.

Accordingly, habeas relief is not warranted with respect to this ground for relief.

**GROUND FOUR: DOUBLE JEOPARDY**

In his final ground for relief, petitioner contends that the trial court erred in imposing

punishments for both the crime of assault with a firearm and for the alleged enhancement based

on using a firearm.  (FAP at 6).  According to petitioner, imposing punishment for both the crime

and the enhancement effectively amounted to imposing multiple punishments for the same act --

namely, using a firearm.[10]  (Id. at 46-64).  The California Supreme Court denied this claim on its

merits.  (Lodgment No. 17).  As explained below, the California Supreme Court did not commit

constitutional error in doing so.

The Double Jeopardy Clause prohibits the imposition of multiple punishments for the same

offense.  See Ball v. United States, 470 U.S. 856, 864-65, 105 S. Ct. 1668, 84 L. Ed. 2d 740

(1985).  The protection against multiple punishments for the same offense, however, does not

necessarily preclude cumulative punishments in a single prosecution.  Missouri v. Hunter, 459

U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983).  When, for example, a state legislature

intends to impose multiple punishments for an enhancement, the Double Jeopardy Clause is not

offended.  Plascencia v. Alameida, 467 F.3d 1190, 1204 (9th Cir. 2006).  The rule stems from the

[9]    California Penal Code section 667(a), in pertinent part, provides as follows: "[A]ny person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively."

[10]    Petitioner also asserts a derivative due process claim based on the trial court's sentence. (FAP at 6, 46-64).  Because, as explained below, petitioner's double jeopardy claim fails, his derivative due process claim fails as well.

19

recognition that sentence enhancements do not "punish" a defendant within the meaning of double jeopardy. See United States v. Watts, 519 U.S. 148, 154, 117 S. Ct. 633, 136 L. Ed. 2d 554 (1997). Rather, such enhancements increase the given sentence because of the manner in which the crime was committed. Id. at 155 ("[T]he defendant is punished only for the fact that the present offense was carried out in a manner that warrants increased punishment.").

This precedent forecloses petitioner's double jeopardy claim. The California legislature has clearly indicated its intent to authorize cumulative punishments when a defendant uses a firearm in the commission of a violent felony, such as the one at issue here. See, e.g., People v. Palmer, 133 Cal. App. 4th 1141, 1152, 35 Cal. Rptr. 3d 373 (Cal.App. 2 Dist. 2005) ("The legislative purpose behind the statute is unambiguous: to impose substantially longer prison sentences . . . on felons who use firearms in the commission of their crimes, in order to protect our citizens and to deter violent crime."); see also Plascencia, 467 F.3d at 1204 (rejecting double jeopardy claim for imposition of gun enhancement pursuant to § 12022.53 and finding that it is clear that the California legislature intended that "a criminal offender may receive additional punishment for any single crime committed with a firearm"). Accordingly, petitioner's sentence does not violate the Double Jeopardy Clause.

As such, the California Supreme Court's rejection of this ground for relief was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. See Richter, 562 U.S. at 102; 28 U.S.C. § 2254(d).

**CERTIFICATE OF APPEALABILITY**

Under Rule 11(a) of the Rules Governing § 2254 Cases, a court must grant or deny a certificate of appealability ("COA") when it denies a state habeas petition. See also 28 U.S.C. § 2253(c).

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a COA. See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A COA may issue "only if . . . [there is] a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing . . . includes showing that reasonable jurists could debate whether (or, for that

matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Slack v. McDaniel</u>, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (citation omitted); <u>see</u> <u>also</u> <u>Sassounian v. Roe</u>, 230 F.3d 1097, 1101 (9th Cir. 2000). Thus, "[w]here a district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack</u>, 529 U.S. at 484.

The Court concludes that, for the reasons set out above, jurists of reason would not find the Court's assessment of petitioner's claims debatable or wrong. Accordingly, a certificate of appealability is denied. Petitioner is advised that he may not appeal the denial of a COA, but he may ask the Ninth Circuit Court of Appeals to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure. <u>See</u> Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

## VI.

## <u>ORDER</u>

For the foregoing reasons, IT IS HEREBY ORDERED that Judgment is entered denying and dismissing the First Amended Petition with prejudice. A certificate of appealability is also denied.

DATED: July 5, 2017

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE